## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

——————————————————————   )
                                                          )
**JOSE TORO,**                                )          **CIVIL ACTION**
                                                          )
               **Plaintiff,**                 )          **NO. 4:16-CV-40022-TSH**
                                                          )
**v.**                                            )
                                                          )
**CSX INTERMODAL TERMINALS, INC.,**    )
**CSX TRANSPORTATION, INC., and**      )
**CSX CORPORATION,**                     )
                                                          )
               **Defendants.**                )
——————————————————————   )

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND
### (Docket No. 13)

**August 9, 2016**

**HILLMAN, D.J.**

Between 2006 and 2010, Jose Toro (Plaintiff) worked as a truck driver for CSX Intermodal

Terminals, Inc. (CSXI), CSX Transportation, Inc. (CSXT), and CSX Corporation (CSX)

(collectively Defendants).  Toro was classified as an independent contractor.  He brought this

action in state court to recover wages and business expenses that he alleges he would have received

if he had been classified as an employee.  After a protracted procedural history, Defendants

removed the case to this Court on the basis of diversity jurisdiction.  Toro moves to remand the

action.  For the reasons set forth below, Toro's motion (Docket No. 13) is ***granted***.

### Background

On or about July 31, 2006, Toro entered into a contractual relationship with Defendants to

be a truck driver.  He worked exclusively for Defendants between July 31, 2006 and August 21,

2010.  He alleges that, during this time, Defendants exerted employer-like control over him and

other similarly situated drivers, including planning the drivers' schedules, assuming complete responsibility for and possession of the drivers' equipment, controlling how the drivers were paid, and mandating policies that the drivers were required to follow.

In May of 2012, Toro brought suit against CSXI in state district court, asserting that CSXI had misclassified him and other similarly situated drivers as independent contractors, in violation of Mass. Gen. Laws ch. 149, §§ 148, 148B, 150.  Toro claimed that CSXI's actions caused him and the other drivers to lose substantial income and incur unlawful and unnecessary legal, personal, and business expenses.  In his cover sheet filed pursuant to Mass. Gen. Laws ch. 218, § 19A(a), Toro estimated that his damages were $10,000.

CSXI removed the case to this Court on September 12, 2012, on the bases of diversity jurisdiction and federal preemption under ERISA.  On February 14, 2013, this Court remanded the action to the district court, finding that CSXI had not proffered any evidence that Toro's recovery would significantly exceed $30,000—$10,000 in calculated damages plus the statutory multiplier and attorney's fees.  Additionally, this Court determined that Toro's complaint did not implicate ERISA because he did not allege that he was seeking to recover benefits under any ERISA plan.

On February 22, 2013, CSXI filed a motion to dismiss in the state district court, arguing that a truck driver was likely to earn more than $25,000 in a sixteen-month period, bringing the case above the jurisdictional limit for that court.  The district court denied the motion on May 1, 2013.  On May 14, 2013, CSXI filed a motion for reconsideration, or in the alternative, for report to the Appellate Division and a stay of the proceedings.  The court denied this motion as well.

On September 6, 2013, CSXI filed a Petition for Relief with the Massachusetts Supreme Judicial Court (SJC).  A single justice of the SJC dismissed Toro's complaint without prejudice to be re-filed in Superior Court.  The single justice held that, pursuant to *Somers v. Converged Access,*

*Inc.*, 911 N.E.2d 739, 743 (Mass. 2009), Toro's claimed lost wages should be taken into account in determining the amount in controversy. *Toro v. CSX Intermodal Terminals, Inc.*, No. SJ-2013-0352 at *4 (Mass. May 16, 2014).  The justice explained:

> Although Toro may have received, on an individual job basis or even over some period of time, more than he would have in terms of 'wages' if classified as an employee, *Somers* is clear that what an employer pays to a misclassified independent contractor cannot be used to offset damages to which that individual, properly classified as an employee, would otherwise be entitled.

*Id.* at *5.  Thus, the "hypothetical wages Toro would have received for the period of time in question here appropriately should be taken into account in determining his likely damages if he were to prevail." *Id.* at *4.  Toro claimed that his $10,000 in estimated damages represented unpaid benefits; and thus, the single justice concluded that any unpaid wages would be in addition to that amount, which meant that his damages were likely to exceed $25,000 in total. *Id.* at *5-*6.

Toro re-filed his complaint in Superior Court on May 29, 2014.  In his cover sheet, he listed his estimated damages as $50,000.  On July 9, 2015, Toro filed an amended complaint, in which he added CSX and CSXT as defendants.  Defendants answered the amended complaint on behalf of CSXI while filing a motion to dismiss on behalf of CSX and CSXT.  On December 30, 2015, the court denied Defendants' motion to dismiss.  Defendants filed a petition for interlocutory relief with the Massachusetts Appeals Court, seeking to prevent Toro from joining CSX and CSXT.  The Appeals Court denied the petition.

In January of 2016, Defendants requested that Toro make an initial settlement demand, including attorney's fees that had accrued thus far in the litigation.  Toro acquiesced on February 3, 2016, demanding $325,000: $75,000 for lost wages, expenses, and loss of benefits, and $250,000 in attorney's fees.  On March 2, 2016, Defendants removed the case to this Court on the basis of diversity jurisdiction.

## Standard of Review

A case is properly removed to federal court pursuant to 28 U.S.C. § 1441(a) only if the action could originally have been brought in federal court. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002). Generally, "defendants may remove to the appropriate federal district court 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction.'" *City of Chicago v. Int'l Coalition of Surgeons*, 522 U.S. 156, 163 (1997) (quoting § 1441(a)). In a case based on diversity jurisdiction, the parties must be diverse in citizenship and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a)(1). The amount in controversy includes statutory multipliers of damages, see *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 82 (1st Cir. 2014), as well as statutory attorney's fees. *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979).

## Discussion

Generally, a defendant must file his or her notice of removal within thirty days of receiving a copy of the complaint. 28 U.S.C. §1446(b)(1). A new thirty-day period begins if the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3). An initial settlement demand can be an "other paper" if it is the first document that informs the defendant that the case is removable. *See Romulus*, 770 F.3d at 78, 80. However, when federal jurisdiction is based on diversity, the defendant cannot remove more than one year after commencement of the action, "unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1).

Toro commenced his action in Superior Court in May of 2014. Defendants filed their notice of removal in March of 2016—within thirty days of receiving Toro's settlement demand,

4

but more than one year after the action had commenced.  The dispositive issue for purposes of Toro's motion to remand is whether the case was removable when it was first filed in Superior Court.  Because I find that the action was removable at that time, I need not address the issue of whether Toro acted in bad faith to conceal the amount in controversy.[1]

As a threshold issue, Toro argues that the amount in controversy should be assessed as of the time of the first removal of the district court action in 2013, when this Court found that Defendants had failed to show that Toro could recover more than $75,000.  I reject this contention. The "time of removal" refers to the instant removal, which occurred in March of 2016, in relation to the Superior Court action. *See Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir. 2009).

Defendants rely on Toro's settlement demand as an "other paper" that first informed them that the case was removable. *See* 28 U.S.C. § 1446(b)(3).  Although I agree that a settlement demand can be an "other paper" for this purpose, see *Romulus*, 770 F.3d at 78, I find that this demand was not Defendants' first notice that Toro's case would satisfy the amount-in-controversy requirement for purposes of removal.

In order for the first thirty-day removal period in section 1446(b)(1) to apply, the plaintiff's complaint must evince removability. *Romulus*, 770 F.3d at 74 ("removability in Section 1446(b)(1) is to be judged by the case as stated on the face of the complaint.").  The defendant need only look to the papers provided by the plaintiff and has no independent duty to investigate the underlying facts to determine the amount in controversy. *Id.* at 74, 75.  The complaint evinces removability of it contains "a clear statement of the damages sought" or if it "sets forth sufficient facts from

---

[1] It is undisputed that the parties are diverse: Toro is a Rhode Island resident; CSXI is a Delaware corporation with a principal place of business in Florida; and CSX and CSXT are Virginia corporations with principal places of business in Florida.

5

which the amount in controversy can easily be ascertained by the defendant by simple calculation." *Id.* at 75.

Here, Toro's Superior Court complaint did not contain a clear statement of the damages sought; however, it was clear from the history of this case, as well as from the statement of damages that accompanied the complaint, that if he prevailed on his claims he could collect more than $75,000. When dismissing the case from the district court, the single justice held that Toro's damages were likely to exceed $25,000. There is nothing in the single justice's opinion to indicate that she intended this number to include the statutory multiplier to which Toro would be entitled if he prevailed. *See* Mass. Gen. Laws ch. 149, § 150. Indeed, unlike the Federal Rules, Massachusetts law provides that the jurisdictional amount in controversy must be calculated *before* any applicable statutory multipliers of damages. *See* Mass. Gen. Laws ch. 218, § 19 (District Court); Mass. Gen. Laws ch. 212, § 3 (Superior Court).

Under these circumstances, knowledge of the single justice's opinion did not constitute an independent investigation on the part of the Defendants. To the contrary, it was CSXI's motion to dismiss the case from the district court that led to the single justice's decision, with CSXI consistently pursuing and ultimately prevailing in the argument that Toro's single damages were greater than $25,000. Defendants concede that in Toro's Superior Court action, filed on the heels of the dismissal of the district court complaint, he asserted "allegations identical to those he had previously made [in district court]." (Docket No. 16 at 4.) Thus, under the unique circumstances of this case, Defendants could ascertain from Toro's Superior Court complaint that his claims, once trebled, were potentially worth more than $75,000.

Defendants could also have taken notice from Toro's civil cover sheet that accompanied his Superior Court complaint, in which he estimated that his damages were $50,000. To be sure,

6

civil cover sheets are inherently imprecise, and the extent of a civil cover sheet's role in determining the amount in controversy is not settled in this Circuit. *See Baker v. Equity Residential Mgmt., L.L.C.*, 996 F. Supp. 2d 1, 5 (D. Mass. 2014); *Williams v. Litton Loan Servicing,* No. CA 10-11866-MLW, 2011 WL 3585528, at *6 (D. Mass. Aug. 15, 2011). However, it is clear that the purpose of the cover sheet is to determine jurisdiction in state court—which is conditioned on single rather than multiple damages. *See* Mass. Gen. Laws ch. 212, § 3A(b) (referencing Mass. Gen. Laws ch. 212, § 3); *see also Huston v. FLS Language Centres*, 18 F. Supp. 3d 17, 22 (D. Mass. 2014) (quoting *Polion v. Wal–Mart Stores, Inc.,* No. 0103645, 2004 WL 3120092 at *7 (Mass. Super. Dec. 6, 2004) ("[t]he statement of anticipated damages [on the cover sheet] merely enables the Clerk of the Court to determine, on the face of the cover sheet, whether the Superior Court has the $25,000 minimum required jurisdiction over the case").

Here, in the context of the recently dismissed district court action and the single justice's corresponding opinion, Toro's claim to $50,000 would most reasonably be read as an estimate of his single damages, adjusted to include unpaid wages, which he had not included in his demand in district court. All of his claims were subject to trebling and included statutory attorney's fees, bringing the total over the $75,000 threshold. *See* Mass. Gen. Laws ch. 149, § 150. Thus, under the unique facts of this case, I find that the Superior Court action was removable when it was filed, and the instant removal is untimely because it occurred more than thirty days after receipt of the complaint.

Toro argues that he is entitled to his costs and fees for pursuing this motion. "An order remanding [an improperly removed case] may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). A case is improperly removed when there is no "objectively reasonable basis for removal." *See*

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).  Although the First Circuit has not defined what constitutes an objectively reasonable basis for removal, other sessions of this court have awarded costs and fees only when the facts are "so one-sided as to have made remand a foregone conclusion." *Youtsey v. Avibank Mfg., Inc.*, 734 F. Supp. 2d 230, 239 (D. Mass. 2010); *see also Rizzi v. 178 Lowell St. Operating Co., LLC*, No. CV 15-12008-NMG, 2016 WL 873167, at *3 (D. Mass. Jan. 8, 2016); *Huston*, 18 F. Supp. 3d at 25.

I find that remand was a foregone conclusion because Defendants did not remove within thirty days of being served, despite the fact that removability was readily ascertainable from the face of the complaint, when read in context with the single justice's opinion and the civil cover sheet.  Defendants' reliance on Toro's alleged bad faith in concealing the amount in controversy is misplaced, because it was clear from the outset of the Superior Court action that he could potentially recover more than $75,000 if he was successful in his claims.  Accordingly, Defendants' attempted removal is untimely, and Toro is entitled to his costs and fees in relation to the instant motion.

### Conclusion

For the reason's set for above, Plaintiff's motion to remand (Docket No. 13) is ***granted***.

**SO ORDERED.**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**